IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
Civil Action No. 1:20-cv-00438 v

| | | |
|---|---|---|
| TIMOTHY KAPP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT FOR INJUNCTIVE** |
| HARRIS TEETER, LLC and HARRIS | ) | **RELIEF, DECLARATORY, AND** |
| TEETER SUPERMARKETS, INC. | ) | **OTHER EQUITABLE RELIEF** |
| | ) | **(JURY TRIAL DEMANDED)** |
| Defendants. | ) | |
| | ) | |

COMES NOW Plaintiff Timothy Kapp, by and through his undersigned counsel hereby files this Complaint and sues Defendants Harris Teeter, LLC and Harris Teeter Supermarkets, Inc. (collectively, "Harris Teeter" or "Defendants") for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12181-12189 ("ADA"), 28 C.F.R. Part 36 and alleges as follows:

**<u>OVERVIEW OF PLAINTIFF'S CLAIMS</u>**

1. Plaintiff is a blind and visually-impaired person[1] who requires screen-reading software to use and comprehend websites, and he brings this civil rights action against Harris Teeter, a grocery store, for its failure to design, construct, maintain, and operate its website, harristeeter.com, related pages, and the online shopping feature called "Harris Teeter

[1] Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision. Others have no vision.

Express Lane" (collectively the "website" or "Defendants' website") to be accessible to and independently usable by Plaintiff and other blind or visually-impaired people.

2. For several years now, the U.S. Department of Justice, the agency with authority to enforce the ADA and promulgate regulations under Title III, has consistently maintained the position that there is a compelling national interest in ensuring that websites comply with the broad mandate of the ADA in order to ensure that disabled persons are not denied the "opportunity to participate and benefit from the goods, services, privileges or advantages afforded to other individuals." *See* STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA, filed in *Gil v. Winn-Dixie Stores, Inc.* (No. 16-CV-23020-RNS) (S.D. Fla 2016).

3. More recently, on September 25, 2018, in a letter to U.S. House of Representative Ted Budd, U.S. Department of Justice Assistant Attorney General Stephen E. Boyd confirmed that public accommodations must make the websites they own, operate, or control equally accessible to individuals with disabilities. Assistant Attorney General Boyd's letter provides:

> The Department [of Justice] first articulated its interpretation that the ADA applies to public accommodations' websites over 20 years ago. This interpretation is consistent with the ADA's Title III requirement that the goods, services, privileges, or activities provided by places of public accommodation be equally accessible to people with disabilities.[2]

4. In addition to the DOJ's position identified above, as of the filing of this complaint, several places of public accommodation have been subjected to liability under Title III of the ADA for maintaining a website with webpages and hosted content that is inaccessible to persons with visual disabilities such as Plaintiff. One of these defendants includes a

[2] *See* Letter from Assistant Attorney General Stephen E. Boyd, U.S. Department of Justice, to Congressman Ted Budd, U.S. House of Representatives (Sept. 25, 2018).

grocery store chain named Winn Dixie that operates in the southeastern United States. Defendants have thus received fair notice that its website and related applications must comply with the ADA.[3]

5. Harris Teeter is a grocery store that operates several physical locations throughout the Southeastern United States that are places of public accommodation under the ADA. U.S.C. § 12181.

6. One or both of the Defendants operate a website harristeeter.com, and one or both of the Defendants are also responsible for the policies, practices, and procedures concerning the website's development, its maintenance, and the content which is hosted on it.

7. The claims asserted in this complaint arise out of the inaccessible nature of Defendants' website, which denies Plaintiff the full and equal opportunity to enjoy the services Defendants provide to the general public and its sighted customers.

8. Because Defendants' website is not fully and equally accessible to blind and visually-impaired consumers in violation of the ADA, Plaintiff seeks a permanent injunction to cause a change in Defendants' policies and practices so that the Defendants' website will become accessible to blind persons like Plaintiff.

**JURISDICTION AND VENUE**

8. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181,

---

[3] *See Robles v. Dominos Pizza*, LLC 913 F.3d 898 (9th. Cir. 2019) ("As a preliminary matter, we hold that Domino's has received fair notice that its website and app must comply with the ADA.") *cert. denied*, 589 U.S. _ (Oct. 7, 2019)(No. 18-1539); *see also Gil v. Winn-Dixie Stores*, Inc, 257 F.Supp. 3d 1340 (S.D. Fl. 2017) ("The factual findings demonstrate that Winn-Dixie's website is inaccessible to visually impaired individuals who must use screen reader software. Therefore, Winn-Dixie has violated the ADA because the inaccessibility of its website has denied Gil the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations that Winn-Dixie offers to its sighted customers.").

et seq., and 28 U.S.C. § 1332.

9. This Court has personal jurisdiction over Defendants because it is deemed a resident of the State of North Carolina and it conducts and continues to conduct a substantial and significant amount of business in the State of North Carolina.

10. Venue is proper in the Middle District of North Carolina pursuant to 28 U.S.C. §1391(b)(1) because Defendants reside in this District and this Court has personal jurisdiction over Defendants.

**PARTIES**

11. Plaintiff Timothy Kapp is a resident of the state of North Carolina. He is also a blind, visually-impaired, person and a member of a protected class of individuals under the ADA. Specifically, Plaintiff is substantially limited in performing one or more major life activities; including but not limited to visual perception, walking around stores, and choosing items for purchase.

12. Defendants are North Carolina domiciled corporations that operate a grocery store business with over 230 stores. Defendants also maintain a website with a URL of harristeeter.com whose inaccessible design is the subject of this suit.

13. Plaintiff has been denied the full use and enjoyment of the services offered and provided on Defendants' website, and the web accessibility barriers Plaintiff has encountered now deter and obstruct Plaintiff from independently meeting essential shopping needs through harristeeter.com.

**FACTS**

14. The Internet has become a significant source of information, and essential tool for completing everyday activities such as shopping, learning, and banking, both for sighted and

visually-impaired persons alike.

15. When websites are accessible, the Internet provides individuals with disabilities great independence.

16. Blind persons are able to access and consume the content of websites by using their keyboards in conjunction with screen access software that vocalizes the textual and visual information sighted users see on a computer screen. This technology is known as screen-reading software. Except for legally blind individuals whose residual vision allows them to use magnification, screen-reading software is currently the only method a blind person may employ to fully and independently access the internet.

17. Blind and visually-impaired users of computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately.

18. An accessible website should be designed and coded in such a way that a screen reader is able to successfully convert the visual interface (i.e. the text, images, buttons, and links on a webpage) into understandable synthesized speech.

19. For screen-reading software to function, the information on a website must be capable of being rendered into meaningful text. For this to occur, the website's designer must adhere to widely known and achievable programing and design rules. When these standards are not followed, website content will not be capable of being rendered into meaningful text. Consequently, the visually-impaired user is unable to access the same content available to sighted users.

20. Screen-reading software is currently the primary method a blind person uses to independently access the internet, websites and other content hosted online.

**Defendants are subject to Title III of the ADA because they operate a place of public accommodation and its website is essential to the range of goods and services Defendants offer to the general public.**

21. The ADA specifically provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation." 42 U.S.C. §12182(a); 28 C.F.R. §36.201(a). The ADA further requires that a public accommodation provide accessible electronic and information technology as auxiliary aids and services. See 28 C.F.R. §36.303(a), (b) and (c)(ii).

22. Commercial websites that are not accessible for blind individuals using screen-readers and keyboards violate this basic mandate.[4]

23. Defendants are subject to the requirements of Title III of the ADA and its regulations because Harris Teeter is a "place of public accommodation" under 42 U.S.C. § 12181. Specifically, Defendants' establishments are grocery stores that affect "commerce" and they fall within the scope of 42 U.S.C. § 12181(E) ("a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment").

24. Defendants' website is instrumental in facilitating customer access to the goods, services, and benefits offered at Defendants' physical locations. Specifically, a key feature of

---

[4] *See National Federation of the Blind v. Target Corp*., 452 F. Supp. 2d 946 (N.D. Cal. 2006). The Department of Justice (the "DOJ") has consistently stated its view that the ADA's accessibility requirements apply to websites belonging to private companies. *See, e.g*., Applicability of the Americans with Disabilities Act (ADA) to Private Internet Sites: Hearing before the House Subcommittee on the Constitution of the House Committee on the Judiciary, 106th Cong., 2d Sess. 65-010 (2000) ("It is the opinion of the Department of Justice currently that the accessibility requirements of the Americans with Disabilities Act already apply to private Internet Web sites and services."); 75 Fed. Reg. 43460-01 (July 6, 2010) ("The Department believes that Title III reaches the Web sites of entities that provide goods or services that fall within the 12 categories of 'public accommodations,' as defined by the statute and regulations."). Thus, Defendants are on notice that the ADA's general mandate applies to website design and accessibility.

Defendants' website is called "Harris Teeter Express Lane" and this feature allows customers to shop for food online, purchase items, and make arrangements to pick those items up at a certain store location or have them delivered to their homes in certain instances.

25. Online grocery shopping applications, such as Harris Teeter Express Lane, have become a common and critical means for the general public to get essential goods and services typically only found at grocery stores.

26. With the movement toward online shopping, there are now two ways that the public shops for groceries: (1) in-person or (2) online.

27. The advent of online grocery shopping has already made the day-to-day lives of many members of the general public more convenient.

28. And, due to the spread of COVID-19, a shift by consumers toward more online grocery shopping has potential public health benefits as well.

29. The public health benefits achieved by the nationwide "stay-at-home" orders put in place by state and local governments in the early spring of 2020 only further show the need for a food distribution system that meets consumer demand through a combination of in-person and online grocery shopping.

30. Harris Teeter's website specifically encourages customers to pay online "to expedite your shopping experience" and "practice social distancing."

31. To further encourage and promote online shopping, Harris Teeter's website also offers exclusive online-only deals to customers so they can "save big." However, only those customers who are able to subscribe to and use the "Express Lane" service can get these

bargain prices.[5]

32. Thus, in addition to making life more convenient, in some circumstances, shopping online at harristeeter.com has the potential to create real savings for those consumers who can navigate and use the website.

33. Online grocery shopping has the potential to make the day-to-day lives of persons with visual impairments more convenient as well, and in light of the current COVID-19 situation, potentially safer from a public health perspective.

34. In light of the foregoing, Defendants' website operates as an essential gateway and an extension of Defendants' physical locations for the general public, and there is a direct nexus between the website harristeeter.com and the operation of Defendants' brick-and-mortar grocery store locations.

35. The Defendants' website is thus subject to regulation under Title III of the ADA because the statute applies to the services of a place of public accommodation, and the implementing DOJ regulations require that a public accommodation "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1) (emphasis added).

**There are inaccessible features and content on Defendants' website that impede access to the goods and services offered by Defendants for blind and low vision customers, including Plaintiff.**

21. Plaintiff has consumed groceries which came from a Harris Teeter and would like the option to place grocery orders online and shop for items and deals that are only available at Harris Teeter.

---

[5] For example, as of May 15, 2020, Express Lane shoppers with a VIC card were able to purchase a container of Dean's French Onion dip for $1.27, a product which ordinarily retails for around $2.75. This deal is only one of many which Defendants make available exclusively to customers making online shopping transactions.

22. Harris Teeter offers certain high-quality products, including its store brands, that are only available for purchase at a Harris Teeter.

23. Plaintiff is attracted to Harris Teeter because of the diversity and quality of its product selection.

24. Harris Teeter often has prices for certain items that are below the prices offered by their competitors.

25. Harris Teeter's "buy-one-get-one-free" specials are not only a primary means of rewarding "VIC" and "E-VIC" customers with deep discounts on certain items, they are a key feature of the company's marketing to the general public.

26. Plaintiff is attracted to Harris Teeter because of these deals.

27. However, many of the items, deals, and potential benefits Defendants offer to their customers via harristeeter.com are not fully accessible to persons with visual impairments such as Plaintiff who rely on assistive technology to navigate the web.

28. Specifically, to comprehend the information that is visually displayed on websites, Plaintiff uses "screen reader" software (e.g. JAWS) which translates the raw information of a webpage into synthesized speech.

29. Plaintiff is a potential customer of Defendants' online shopping system who has attempted to utilize Defendants' website using his laptop computer and a screen reader software program, but was ultimately frustrated.

30. Defendants have failed to make certain threshold information readable and navigable by a screen reader, thus denying Plaintiff and other persons who rely on a screen-reader with a meaningful, useable, equivalent level of web access that Defendants provide to members of the general, sighted public.

31. In effect, the barriers to accessibility posed to a blind person by Defendants' online shopping system are akin to the existence of physical barriers that would prevent or otherwise strongly discourage a disabled person from coming into a grocery store location and moving around inside.

32. Plaintiff continues to desire to utilize Defendants' website for informing his purchasing decisions and meeting grocery needs, but he is unable to independently do so since some features of the inadequately designed website are effectively unnavigable to him due to his disability.

33. On information and belief, Defendants or their agents charged with designing and managing harristeeter.com did not adequately test the features of the harristeeter.com website with screen reader software before launching it to the general public.

34. On information and belief, Defendants have not adopted and/or have neglected to follow an appropriate Web Accessibility Policy to help ensure that individuals with disabilities enjoy full and equal access to the goods and services provided by the website.

35. On information and belief, the Defendants have not instituted a Web Accessibility Committee whose objective is to help ensure full and equal use of its website by individuals with disabilities.

36. On information and belief, the Defendants have not designated an employee or third-party consultant to act as a Web Accessibility Coordinator to help ensure that individuals with disabilities have full and equal use of its website.

37. On information and belief, the Defendants have not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of its website by individuals with disabilities.

38. Defendants' website does not fully meet the Web Content Accessibility Guidelines ("WCAG") 2.0 basic level of web accessibility.

39. Thus, Plaintiff will continue to suffer irreparable injury from the Defendants' acts, policies, and practices set forth herein unless enjoined by this Court.

**COUNT I – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

40. The foregoing paragraphs are realleged and incorporated by reference.

41. As a result of the barriers to access the harristeeter.com website imposes upon Plaintiff and others similarly situated (when the removal of those barriers is readily achievable), the Defendants have denied individuals with disabilities who are visually impaired full and equal enjoyment of the information and services that are made available to the general public on the website at harristeeter.com. This is a violation of Title III of the ADA (42 U.S.C. §12101 et. seq., 42 U.S.C. §12182 et. seq.).

42. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. (42 U.S.C. § 12182(b)(1)(A)(i)).

43. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

    a. "[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or

accommodation being offered or would result in an undue burden." (42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).)

44. Defendants' website is subject to regulation under Title III of the ADA because it has a "nexus" with Defendants' physical locations, which are places of public accommodation under 42 U.S.C. §12181.

45. Alternatively, pursuant to 42 U.S.C. §12181(7)(E), harristeeter.com is itself a place of public accommodation under the ADA because it permits, facilitates, and improves access for members of general public to the goods and services Defendants provide. As such, like Defendants' physical stores/locations, the design and functionality of the harristeeter.com website must also comply with the broad accessibility mandate of the ADA.

46. However, the Defendants' website is not in compliance with the ADA.

47. Specifically, the Defendants' website is riddled with several accessibility barriers and blunders, including, but not limited to, the following.

   a. Certain information, including links, are not readable by a screen reader and are therefore not "perceivable" by Plaintiff.

   b. Certain links do not respond to keyboard activation, are not keyboard accessible, and are therefore, not "operable" by Plaintiff.

   c. The purposes of certain buttons and links are not explained to the blind user with readable text and this creates a significant likelihood that he or she will activate them and cause the website to abruptly change context, directing the user away from the content they were originally seeking.

   d. Where the website does provide a means of accessibility which could accommodate the unique needs of blind person in some situations, the blind user is not alerted that they have an option for an alternative means of input.

e. For certain features of the website, such as a form text entry box with underlying validation criteria, when an error message is generated automatically by the website, no information which explains the source of that error is provided via readable text. Essentially, the website's failure to provide an error message that is readable by a screen reader program that explains to the blind user the steps they need to take to fix the error, creates a "trap" and ultimately prevents the user from accessing the feature of the website they wanted to use in the first place.

f. Where content is repeated on multiple webpages, the blind user is not provided with a means to by-pass the repetitive content and this adds significant, unnecessary time to the navigation of the website.

g. Certain information in the online shopping application is not presented in a meaningful sequence and a blind person is therefore at a higher risk of inadvertently making a selection that could result in a change of items which are actually provided or delivered.

h. Plaintiff and others similarly situated are not presented with information related to the prices of certain goods that is made available to sighted users.

48. Due to, but not limited to, the above, initiating and successfully using Harris Teeter's online shopping system via a screen reader and a keyboard can be virtually impossible for a blind person. Even if a blind person successfully initiates the online shopping process, several barriers would then follow that would make selecting and purchasing items frustratingly difficult.

49. Regardless of whether a visually impaired would choose to use the Express Lane shopping application, Defendants also publish certain information with the intent to inform and

influence the purchasing decisions of members of sighted public that is not at all presented to Plaintiff via his screen reader software.

50. The law requires that Defendants reasonably accommodate Plaintiff's disabilities by removing these and other access barriers. Removal of the barriers is readily achievable and may be carried out without much difficulty or expense.

51. The Defendants have therefore violated Title III of the ADA (and continue to do so) by leaving in place an inadequate website design which burdens and impedes Plaintiff and other blind individuals who rely upon screen reader software from accessing the goods, services, and other privileges offered to the general public at harristeeter.com and its related web pages.

52. Plaintiff is a member of a protected class of persons under the ADA because he is blind, and he has been, and will be in the absence of an injunction, injured by Defendants' failure to provide its online content and services in a manner compatible with prevailing screen reader programs.

53. Plaintiff is therefore entitled to injunctive relief pursuant to 42 U.S.C. §12133 as a remedy to Defendants' conduct, including an order that:

    a. requires Defendants to adopt and implement a web accessibility policy to help ensure that persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations made available through its website; and

    b. requires Defendants to adopt internal policies and implement web design and programming modifications that are targeted at making its website equally accessible to persons with disabilities, including persons with visual impairments.

54. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and he is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendants.

55. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

WHEREFORE, Plaintiff hereby requests the following relief:

a. A jury trial;

b. A Declaratory Judgment that, at the commencement of this action, Defendants were in violation of the specific requirements of Title III of the ADA 42 U.S.C. § 12181 et seq., and the relevant implementing regulations of the ADA, for Defendants' failure to take action that was reasonably calculated to ensure that its website is fully and equally accessible to, and independently usable by, blind and visually-impaired individuals;

c. A preliminary and permanent injunction enjoining Defendants from further violations of the ADA, 42 U.S.C. § 12181 et seq., with respect to its website, harristeeter.com;

d. For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to 42 U.S.C. § 12188(a)(1);

e. For prejudgment interest to the extent permitted by law;

f. For costs of suit; and

g. For such other and further relief as this Court deems just and proper.

This the ____th day of May 2020.

**MAGINNIS LAW, PLLC**
*Counsel for Plaintiff*

BY: /s/ *Garrett L. Davis*_________
EDWARD H. MAGINNIS

N.C. State Bar No. 39317
GARRETT L. DAVIS
N.C. State Bar No. 52605
4801 Glenwood Avenue, Suite 310
Raleigh, North Carolina 27612
Telephone: 919.526.0450
Fax: 919.882.8763
emaginnis@maginnislaw.com
gdavis@maginnislaw.com